**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------------------X
THE ANNUITY, PENSION, WELFARE, TRAINING AND
LABOR MANAGEMENT COOPERATION TRUST FUNDS OF
THE INTERNATIONAL UNION OF OPERATING
ENGINEERS, LOCAL 14-14B, AFL-CIO, BY THEIR
TRUSTEES EDWIN L. CHRISTIAN, CHRISTOPHER T.
CONFREY, JOHN CRONIN, DON DeNARDO, KENNETH
KLEMENS, JR., JOHN F. O'HARE, DENISE M. RICHARDSON
and ERNESTO TERSIGNI, and INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 14-14B, AFL-CIO, BY ITS
BUSINESS MANAGER EDWIN L. CHRISTIAN,

Plaintiffs,

-against-

COASTAL ENVIRONMENTAL GROUP INC.,

Defendant.
--------------------------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

**18 Civ. 5773 (AMD) (ST)**

**TISCIONE, United States Magistrate Judge:**

## INTRODUCTORY STATEMENT

The Annuity, Pension, Welfare, Training and Labor Management Cooperation Trust Funds

of the International Union of Operating Engineers, Local 14-14B, AFL-CIO ("Local 14 Trust

Funds"), represented by their trustees Edwin L. Christian, Christopher T. Confrey, John Cronin,

Don DeNardo, Kenneth Klemens, Jr., John F. O'Hare, Denise M. Richardson and Ernesto Tersigni

(the "Trustees"), together with the International Union of Operating Engineers Local 14-14B

("Local 14") represented by its business manager Edwin L. Christian (collectively, "Plaintiffs"),

commenced this action on October 16, 2018, against Coastal Environmental Group, Inc. ("Coastal

Environmental" or "Defendant") pursuant to the Employee Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., and the Labor Management Relations Act of 1947

("LMRA"), 29 U.S.C. § 141 *et seq. See generally* Complaint ("Compl."), Dkt. No. 1. Plaintiffs

1

allege that Defendant failed to make required annuity, voluntary annuity, pension, welfare, and training benefit contribution payments owed to Plaintiffs under the terms of a collective bargaining agreement in violation of Section 515 of ERISA, 29 U.S.C. § 1145, and further allege that Defendant failed to make additional required fringe benefit contribution payments owed to Plaintiffs under the terms of the same collective bargaining agreement in violation of Section 301 of the LMRA, 29 U.S.C. § 185 *et seq*. Compl. ¶¶ 1, 27–28, 30; *see also* Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment Against Defendant Coastal Environmental Group ("Memorandum in Support of Default Judgment" or "Memo. Supp. Mot. Def. J."), Dkt. No. 13, at 6–8. The Honorable Ann M. Donnelly has referred Plaintiffs' motion to this Court for a report and recommendation.

Based on a review of the well-pleaded allegations and evidence presented in Plaintiffs' filings, this Court respectfully recommends that Plaintiffs' motion for default judgment be granted in part and denied in part as explained below.

## BACKGROUND

### A. Factual Background

The following undisputed facts are drawn from the Complaint, Dkt. No. 1, as well as additional documents incorporated by reference thereto. These additional documents include the collective bargaining agreement between Plaintiffs and Defendant ("CBA"), annexed to the affidavit of Plaintiffs' counsel James M. Steinberg ("Steinberg Aff."), Dkt. No. 9, as Exhibit B, Dkt. No. 9-2; the trust agreements establishing the Local 14 Trust funds ("Trust Agreements"), Steinberg Aff., Exhs. C–G, Dkt. Nos. 9-3, 9-4, 9-5, 9-6, 9-7; and the audit report of Defendant's books and records identifying the contributions claimed by Plaintiffs to be due ("Audit Report"), Steinberg Aff., Exh. I, Dkt. No. 9-9.

Plaintiff Local 14 constitutes a labor organization pursuant to Section 2 of the LMRA, 29 U.S.C. § 152, of which Edwin L. Christian serves as Business Manager and Chief Executive Officer. Compl. ¶¶ 11–12. Plaintiffs Local 14 Trust Funds constitute joint trustee funds created by trust indentures in accordance with Section 302 of the LMRA, 29 U.S.C. § 186. *Id.* ¶ 4. The Local 14 Welfare and Training Funds constitute "employee welfare benefit plans" pursuant to Section 3(1) of ERISA, 29 U.S.C. § 1002(1), while the Local 14 Annuity and Pension Funds constitute "employee pension benefit plans" pursuant to Section 3(2) of ERISA, 29 U.S.C. § 1002(2). *Id.* ¶¶ 7–8. Additionally, each of the Local 14 Annuity, Pension, Welfare and Training Funds (collectively, the "ERISA Funds") constitutes a "multiemployer/employee benefit plan" pursuant to Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and (37). *Id.* ¶ 9. By contrast, the Local 14 Labor Management Cooperation Trust Fund ("LMCT Fund") is a non-ERISA entity and constitutes a "labor management cooperation trust fund" pursuant to the Labor-Management Cooperation Act of 1978, 29 U.S.C. 186(c)(9) and under Section 501(c)(5) of the Internal Revenue Code. *Id*. ¶ 10. Edwin L. Christian, Christopher T. Confrey, John Cronin, Don DeNardo, Kenneth Klemens, Jr., John F. O'Hare, Denise M. Richardson and Ernesto Tersigni (collectively, "the Trustees") all serve as trustees of each of the Local 14 Trust Funds. *Id*. ¶¶ 5–6. With respect to the ERISA Funds, the Trustees constitute "fiduciaries" pursuant to Section 3(21) of ERISA, 29 U.S.C. § 1002(21). *Id.* ¶ 5. With respect to the LCMT Fund, the Trustees constitute "fiduciaries" pursuant to Section 501 of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501, as well as the common law of trusts. *Id.* ¶ 6.

Plaintiffs allege upon information and belief that Defendant constitutes an employer under Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and Section 301 of the LMRA, 29 U.S.C. § 185, and that Defendant was and remains a New York corporation maintaining a principal location of

business in East Patchogue, New York.[1] *Id.* ¶¶ 13, 16. At all times relevant to the present action, Defendant was party to and agreed to be bound by the CBA between Local 14 and the General Contractors Association of New York, Inc. ("GCA"), effective from July 1, 2014 through June 30, 2018, by virtue of Defendant's membership with the GCA. Compl. ¶ 17; *see also* CBA at 1, art. IV. Defendant was obligated under the terms of the CBA to make contributions to both the aforementioned ERISA Funds and a deferred-income trust called the "Annuity Voluntary Fund"[2] (collectively, the "ERISA Contributions") at specified rates corresponding to the hours of work performed by employees covered under the CBA. Compl. ¶ 18; CBA art. XI-A §§ 1−6; *see also* Monterroso Affidavit ("Monterroso Aff.") ¶ 7, Dkt. No. 11. Defendant was also required under the terms of the CBA to remit additional payments to Plaintiff Local 14 in the form of general dues assessments ("Union Dues") and mandatory union defense fund contributions ("Defense Fund Contributions"), along with a mandatory contribution to the LMCT Fund later adopted as of February 10, 2017 ("LMCTF Dues"; collectively with Union Dues and Defense Fund Contributions, the "non-ERISA Contributions"). Compl. ¶¶ 18, 22, 24; CBA art. XI-A §§ 7−8; *see*

---

[1] Although allegations based on information and belief cannot support a finding of liability where they are conclusory, nonconclusory allegations based upon information and belief "may be sufficient to hold a defendant individually liable on a default judgment where such allegations state facts primarily within the defendant's knowledge." *Flanagan v. Marco Martelli Assocs., Inc.*, No. 13 Civ. 6023 (ADS) (AKT), 2015 U.S. Dist. LEXIS 29283, at *7–8 (E.D.N.Y. Jan. 29, 2015); *see, e.g.*, *J & J Sports Prods., Inc. v. Imperial Lounge & Sports Bar Inc.*, No. 08 Civ. 2061 (ENV) (MDG), 2012 U.S. Dist. LEXIS 55330, at *3 (Mar. 30, 2012) (admitting as fact allegations pled on information and belief in context of considering a motion for default judgment), *R & R adopted*, 2012 U.S. Dist. LEXIS 55331 (E.D.N.Y. Apr. 19, 2012); *Annuity, Pension, Welfare, Training and Labor Mgmt. Cooperation Tr. Fund of the Int'l Union of Operating Eng'rs Local 14-4B v. BKS-NY, LLC*, No. 18 Civ. 0256 (LDH) (VMS), 2018 U.S. Dist. LEXIS 132994, at *4 n.2 (Aug. 6, 2018) ("[w]here a fact pled on information and belief states facts primarily within Defendant's knowledge, it will be deemed admitted"), *R & R adopted*, 2018 U.S. Dist. LEXIS 155797 (E.D.N.Y. Sept. 11, 2018).

[2] As will be discussed below, despite bearing a similar name, the Annuity Voluntary Fund is a different entity than the Annuity Fund. *See* CBA art. XI-A §§ 4–5 (mandating the regular payment of separate annuity and voluntary annuity dues and providing for the establishment of two separate funds tasked respectively with collection of one of these assessments).

*also* Steinberg Aff., Exh. H ("Notification of Labor Management Cooperation Trust Fund Allocation," or "LMCTF Allocation Notice"), Dkt. No. 9-8; Monterroso Aff. ¶ 7. In keeping with its obligations under the CBA, Defendant consented to an audit of its records conducted by Plaintiffs' auditor for the period of July 1, 2014, to February 28, 2018. Compl. ¶ 21; *see also* CBA art. XI-B § 11; Steinberg Aff., Exh. C (the "Annuity Fund Trust Agreement") art. 4 § 12; Steinberg Aff., Exh. D (the "Pension Fund Trust Agreement") art. VII § 3; Steinberg Aff., Exh. E (the "Welfare Fund Trust Agreement") art. VII § 3; Steinberg Aff., Exh. F (the "Training Fund Trust Agreement") art. 4 § 12. The report from this audit concluded that Defendant failed to pay a portion of the dues it owed in ERISA and non-ERISA Contributions during a delinquency period spanning from November 1, 2014, to October 31, 2016. Compl. ¶ 22; *see also* Audit Report at 2. As of yet, Defendant has failed to pay any of the outstanding dues identified by the audit. Compl. ¶¶ 23–25.

## B. Procedural History

Plaintiffs filed this action against Defendant in a timely fashion on October 16, 2018, *see* Compl., and then filed proof of service of the Summons and Complaint upon Defendant on November 5, 2018, *see* Summons Returned Executed, Dkt. No. 5. When Defendant failed to appear or otherwise defend in response to Plaintiffs' action, Plaintiff requested the entry of a Certificate of Default against Defendant, Dkt. No. 6, which was duly issued by the Clerk of Court on December 3, 2018, Dkt. No. 7. That same day, Plaintiffs moved for default judgment against Defendant and certified service of Plaintiffs' request for certificate of default, Clerk's entry of default, notice of Plaintiffs' motion for default judgment, supporting affidavits and exhibits, and supporting memorandum of law upon Defendant at Defendant's address on file. *See* Dkt. Nos. 8–14. The District Court then referred Plaintiffs' motion for default judgment to this Court for a

report and recommendation. Order dated December 4, 2018. To date, Defendant has responded neither to the Complaint nor to Plaintiffs' motion.

**DISCUSSION**

**A. Liability Under Default Judgment**

The Federal Rules of Civil Procedure establish the procedure by which a default judgment may be obtained. *See Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95–96 (2d Cir. 1993) (explaining the process for entry of default and entry of default judgment prescribed by Fed. R. Civ. P. 55). First, if "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise," then "the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, provided that the movant's claim is not "for a sum certain or a sum that can be made certain by computation," the movant then "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b). Finally, if the defaulting party still fails to appear or move to set aside the default under Rule 55(c), the Court may then enter a default judgment in favor of the movant. Fed. R. Civ. P. 55(b)(2).

A party in default is deemed to concede all well-pleaded factual allegations in the complaint pertaining to liability. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). However, "[e]ven after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *In re Wildlife Ctr., Inc.*, 102 B.R. 321, 325 (Bankr. E.D.N.Y. 1989); *see also Rolls-Royce PLC v. Rolls-Royce USA*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) ("[I]t remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief."). A court considering a motion for default judgment thus retains the discretion to determine whether the entry of default judgment is appropriate in the given

case. *Enron*, 10 F.3d at 95; *see also Taylor v. 312 Grand St. LLC*, 15 Civ. 5410 (BMC), 2016 U.S. Dist. LEXIS 36623, at *3 (E.D.N.Y. Mar. 22, 2016) ("[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." (citations omitted)). A plaintiff moving for default judgment against a defendant in default thus retains the burden to establish the defendant's liability on any asserted cause of action on the basis of the unchallenged factual allegations and reasonable inferences drawn from the evidence in that case. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) ("[A] district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action . . . .").

Additionally, a defendant's default does not constitute admission of the plaintiff's allegations relating to the amount of damages. Fed. R. Civ. P. 8(b)(6); *see Cement & Concrete Workers Dist. Council Welfare Fund v. Metrofoundation Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). Thus, upon establishing the liability of a defaulting defendant, the Court must conduct its own analysis to "ascertain the amount of damages with reasonable certainty" by first "determining the proper rule for calculating damages on [the given] claim" and then "assessing plaintiff's evidence supporting the damages to be determined under this rule." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). The plaintiff in such a case bears the burden to demonstrate "that the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound Exhibitgroup*, 973 F.2d at 159.

### B. Whether Defendant Defaulted.

The procedural history of this action makes clear that Defendant is appropriately deemed to be in default. Despite being properly served by Plaintiffs on October 30, 2018, Defendant failed

to answer or in any way respond to Plaintiffs' complaint as of November 29, 2018. *See* Summons Returned Executed, Dkt. No. 5; Request for Certificate of Default, Dkt. No. 6; Affirmation in Support of Request for Certificate of Default ¶¶ 2–5, Dkt. No. 6-1. Upon Defendant's failure to respond, Plaintiffs filed a motion for entry of default against Defendant on November 29, 2018, pursuant to which the Clerk of Court entered a certificate of default against Defendant on December 3, 2018. *See* Request for Certificate of Default, Dkt. 6; Clerk's Entry of Default, Dkt. No. 7. Thus, in keeping with the standard provided for by Fed. R. Civ. P. 55(a), Defendant is properly considered to have admitted to all factual allegations in the Complaint and is subject to this Court's assessment of its liability thereby.

## C.  Whether This Court Has Jurisdiction.

This Court finds that it has federal question subject matter jurisdiction over this action given that all claims herein have been brought pursuant to ERISA, 29 U.S.C. § 1001 *et seq*., and the LMRA, 29 U.S.C. § 141 *et seq*. *See* Compl. ¶ 2; 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States."); *Okla. Tax Comm'n v. Graham*, 489 U.S. 838, 840–841 (1989) ("[W]hether a case is one arising under federal law, in the sense of the jurisdictional statute, must be determined from what necessarily appears in the plaintiff's statement of his own claim . . . ." (brackets, ellipses, internal citations, and quotation marks omitted)).[3]

---

[3] Despite the Court's ultimate conclusion that subject matter jurisdiction is present here, Plaintiffs' failure to clearly allege the existence of a nexus of interstate commerce enabling the applicability of ERISA and the LMRA warrants further comment. *See Reynolds v. Wohl*, 332 F. Supp. 2d 653, 656 (S.D.N.Y. 2004) ("Hornbook law provides that the party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction." (citations omitted)). Statutory language and supporting case law make amply clear that both ERISA and the LMRA are limited by Congress's power under the Commerce Clause, Art. I, Sec. 8, cl. 3, and apply exclusively to cases in which parties either engage in interstate or foreign commerce or operate in industries affecting interstate or foreign commerce. *See, e.g.*, 29 USC § 152(6) ("The term 'commerce' means trade, traffic, commerce, transportation, or communication among the several States . . . or between any foreign country and any State, Territory, or the District of Columbia

This Court also finds that it has personal jurisdiction over Defendant given that Defendant is a New York corporation and maintains a principal place of business at 264 Sills Road, East Patchogue, New York. *See* Compl. ¶ 13; *Metro. Life Ins. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567–68 (2d Cir. 1996) ("[A] court's general jurisdiction . . . is based on the defendant's general business contacts with the forum . . . and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." (citing *Helicopteros Nacionales de*

---

. . . .");  29 USC § 1002(11) ("The term 'commerce' means trade, traffic, commerce, transportation, or communication between any State and any place outside thereof."); *470 Stratford Holding Co. v. Local 32B-32J, Serv. Emps. Int'l Union*, 805 F. Supp. 118, 121 (E.D.N.Y. 1992) ("Whether [the LMRA] jurisdictional requisite is met is a question of law. The focus of [which] should not be . . . whether any employer or any labor organization engages in activity that affects interstate commerce, but instead, whether the flow of commerce could be affected or impeded as a result of a labor dispute . . . ."). In the present case, however, neither Plaintiffs' complaint nor any of Plaintiffs' supporting documents contain a clear allegation that any party to this action is located out of state, engages in interstate or foreign commerce, or operates in an industry that has substantial effect on interstate or foreign commerce. *See, e.g.*, Compl. ¶ 2 (alleging the appropriateness of subject matter jurisdiction under 29 U.S.C. § 185(c), 1132, and 1145 without further explanation), ¶¶ 13–15 (alleging without elaboration that Defendant "was and still is a foreign corporation" after having stated in the previous sentence that Defendant is "a New York corporation with its principal place of business located [in] . . . New York.").

Despite their apparent shortcomings, Plaintiffs' allegations nonetheless meet the exceedingly low bar required to maintain a claim of jurisdiction at the pleading stage, due to the special exception that applies when a cause of action contains a "jurisdictional" element. Rule 8 of the Federal Rules of Civil Procedure mandates that a pleading contain "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a). As other Courts in this Circuit have pointed out, "[m]ere invocation of federal jurisdiction, without any facts demonstrating a federal law claim, does not create federal subject matter jurisdiction." *Grigoli v. 42 U.S.C. §654(3) Child Support Enf't Div.*, 2018 U.S. Dist. LEXIS 74048, at *5 (May 1, 2018), *dismissed by* 2018 U.S. Dist. LEXIS 114711 (S.D.N.Y. July 9, 2018). However, where the "asserted basis for subject matter jurisdiction is also an element of the plaintiff's allegedly federal cause of action, [courts] ask only whether—on its face—the complaint is drawn so as to seek recovery under federal law or the Constitution." *Carlson v. Principal Fin. Grp.*, 320 F.3d 301, 307 (2d Cir. 2003). Upon finding that a complaint is so drawn, courts will then "assume or find a sufficient basis for jurisdiction, and reserve further scrutiny for an inquiry on the merits." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1189 (2d Cir. 1996) (citations omitted); *cf. Velez v. Vassallo*, 203 F. Supp. 2d 312, 332 (S.D.N.Y. 2002) ("[R]esolution of the question of whether or not Defendants actually are 'an enterprise engaged in commerce' [under the Fair Labor Standards Act] is an issue that goes to the merits of Plaintiffs' claims rather than the Court's subject matter jurisdiction."). In the present case, given that Plaintiffs allege sound statutory grounds for the exercise of subject matter jurisdiction, this Court finds that it has jurisdiction and postpones further inquiry until discussing the merits of the claims.

*Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 & nn. 8–9 (1984))); *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (holding that a corporation has minimum contacts to support the exercise of general personal jurisdiction "when [its] affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State'" (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)); *BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549, 1558 (2017) ("The 'paradigm' forums in which a corporate defendant is 'at home' are [its] place of incorporation and its principal place of business.").

### D.  Whether ERISA and the LMRA apply to the Parties

As noted above, Plaintiffs allege that the ERISA Funds are "multiemployer/employee benefit plans" of which the Trustees are "fiduciaries" under Section 3 of ERISA, 29 U.S.C. § 1002, and that Defendant is an employer under Section 3(5) of ERISA, 29 U.S.C. § 1002(5) and Section 301 of the LMRA, 29 U.S.C. § 185. Compl. ¶¶ 5, 9, 16. Plaintiffs also allege that Local 14 is a "labor organization," the LMCT Fund is a "labor management cooperation trust fund," and the Local 14 Trust Funds are joint trustee funds established pursuant to Sections 2 and 302 of the LMRA, 29 U.S.C. §§ 152, 186, and further claim that the Trustees are "fiduciaries" of the LMCT Fund pursuant to Section 501 of the LMRDA, 29 U.S.C. § 501. *Id.* ¶¶ 4–6, 10–12, 16. Since these claims entail determinations of legal status rather than mere stipulations of fact, this Court will first review and confirm these conclusions before proceeding to assess the merits of Defendant's liability thereupon. *See, e.g., Gesualdi v. Ava Shypula Testing & Inspection, Inc.*, No. 13 Civ. 1873 (DRH) (GRB), 2014 U.S. Dist. LEXIS 50752, at *7–11 (E.D.N.Y. Feb. 28, 2014) (conducting an analysis of defaulting defendant's liability under ERISA on the basis of plaintiff's allegations of fact rather than merely accepting plaintiff's allegation of defendant's liability as fact); *Durso v. Modern Food Ctr., Inc.*, No. 17 Civ. 7324 (LAK) (GWG), 2018 U.S. Dist. LEXIS 101607, 2018

WL 3019112, at *8–10 (S.D.N.Y. June 18, 2018) (same); *see also Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996) (characterizing the determination of petitioner's status as an "employer" or "fiduciary" under ERISA as a "legal conclusion" as distinguished from the "factual findings" concerning petitioner's conduct upon which that determination was based).

ERISA, a federal legislative program that directs the administration of employee benefits for businesses engaged in interstate commerce, is "designed to provide comprehensive and uniform regulation of employee benefit plans by imposing requirements for reporting, disclosure and fiduciary responsibility once an employer chooses to provide benefits . . . ." *HMI Mech. Sys., Inc. v. McGowan*, 266 F.3d 142, 148 (2d Cir. 2001) (citation omitted); *see generally* 29 U.S.C. § 1001 *et seq*. Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement . . . [to] make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. ERISA also provides that "[p]lan fiduciaries may bring civil actions to enforce the provisions of such plans and/or collective bargaining agreements." *Annuity, Pension, Welfare, Training and Labor Mgmt. Cooperation Tr. Fund of the Int'l Union of Operating Eng'rs Local 14-4B v. BKS-NY, LLC*, No. 18 Civ. 0256 (LDH) (VMS), 2018 U.S. Dist. LEXIS 132994, at *8 (Aug. 6, 2018), *R & R adopted*, 2018 U.S. Dist. LEXIS 155797 (E.D.N.Y. Sept. 11, 2018); *see also* 29 U.S.C. § 1132(a)(3). The success of Plaintiffs' claims with respect to any dues allegedly owed to its ERISA entities depends on the applicability of this statutory framework.

The LMRA, in contrast, is a collection of federal statutes that apply generally to circumstances of "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a); *see generally* 29

U.S.C. § 141 *et seq.*; *see also Shea v. McCarthy*, 953 F.2d 29, 30 (2d Cir. 1992) ("[T]he Labor Management Relations Act . . . provides in pertinent part that suits for violation of contracts between . . . labor organizations representing employees in an industry affecting interstate commerce may be brought in a United States District Court." (internal quotation marks, brackets, and citations omitted)). Designed in part to "protect the rights of individual employees in their relations with labor organizations whose activities affect commerce," the LMRA provides that "any labor organization which represents employees in an industry affecting commerce . . . may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States." 29 U.S.C. § 141, 185(b). The success of Plaintiffs' claims in this action with respect to any dues allegedly owed to its non-ERISA entities depends on the applicability of this federal legislative scheme.

The Court considers first whether the parties to this action satisfy the interstate commerce element necessary to the applicability of ERISA and the LMRA. *See* 29 U.S.C. §§ 152(6), 1002(11).[4] As discussed above, despite invoking federal question jurisdiction under 28 U.S.C. § 1331 at the pleading stage by stating claims brought pursuant to ERISA and the LMRA, *see* Compl. ¶ 2, Plaintiffs fail to allege anywhere in their Complaint, affidavits, or supporting memoranda that any party to this action engages in or operates in an industry that has substantial effect on interstate or foreign commerce. As a general matter, a plaintiff's failure to allege an element of a cause of action at law in an action for default judgment constitutes grounds for dismissal of that claim. *Cf.,*

---

[4] Although we recognize that some courts have held a *per se* rule that all employee welfare-benefit plans have an effect on interstate commerce, *see, e.g., Crespo v. Candela Laser Corp.*, 780 F. Supp. 866, 868 n.2 (D. Mass. 1992) (finding that "[c]laims under the ERISA statute need no jurisdictionally minimum amount in controversy," and holding that "[b]ecause every employee welfare-benefit plan has at least a minimal effect on interstate commerce, ERISA applies to all employee welfare-benefit plans" (internal quotations and citations omitted)), this Court prefers to find stronger footing upon which to root so basic a statutory jurisdictional prerequisite to Plaintiffs' claims.

*e.g., Fairfield Fin. Mortg. Grp. v. Luca*, 584 F. Supp. 2d 479, 488 (E.D.N.Y. 2008) (dismissing plaintiff's claim with leave to amend where plaintiff failed to allege bad faith in an action for unfair competition); *Velez v. Vassallo*, 203 F. Supp. 2d 312, 330 (S.D.N.Y. 2002) (holding in context of a Fair Labor Standards Act ("FLSA") case that where "showing that the defendant constitutes an enterprise engaged in commerce . . . is simply an element of the cause of action[;] . . . [a] plaintiff's failure to make this showing constitutes a failure on the merits"). Nonetheless, as this Court has held in the context of a plaintiff's failure to allege an interstate jurisdictional nexus in FLSA cases, the Court is entitled to take judicial notice of facts open to clear inference from the record in support of an otherwise neglected element of the plaintiff's case. *See, e.g., Drice v. My Merch. Servs., LLC*, No. 15 Civ. 0395 (MKB) (MDG), 2016 U.S. Dist. LEXIS 29006, at *9 (Mar. 4, 2016) (inferring, in context of considering defendant's liability for an alleged FLSA violation, "that [defendant was] engaged in interstate commerce" based on "the nature of the business that [defendant was] engaged in" even though "[p]laintiff d[id] not address the interstate commerce requirement in the complaint"), *R & R adopted*, 2016 U.S. Dist. LEXIS 42779, 2016 WL 1266948 (E.D.N.Y. Mar. 31, 2016); *Huerta v. Victoria Bakery*, No. 10 Civ. 4754 (RJD) (JO), 2012 U.S. Dist. LEXIS 46407, at *3–6 (E.D.N.Y. Mar. 30, 2012) (declining to accept a magistrate judge's "recommendation against drawing the requisite interstate commerce nexus" in an FLSA case, concluding instead that "the original complaint . . . provide[d] a sufficient basis . . . for inferring the requisite interstate commerce connection under the sensible approach adopted by other judges in this district"); *Shim v. Millennium Group*, No. 08 Civ. 4022 (FB) (VVP), 2009 U.S. Dist. LEXIS 6014, at *7–8 (E.D.N.Y. Jan. 28, 2009) (inferring the existence of an interstate commerce nexus from the facts alleged by plaintiffs' complaint even though "plaintiffs' complaint d[id] not

explicitly allege that the corporate defendants [we]re an enterprise engaged in interstate commerce").

Even though *Drice*, *Huerta*, and *Shim* all involved unpaid wage claims, alleging violations of the FLSA, the proposition that a court can take judicial notice of facts alleged by a plaintiff's complaint in order to satisfy an interstate commerce element extends beyond the confines of the FLSA. Cases interpreting the interstate commerce element in the FLSA have equal import here, in the context of a dispute involving the application of the LMRA and ERISA, based on the heightened evidentiary standard in FLSA cases. [5] In *McLeod v. Threlkeld*, 319 U.S. 491, 493 (1943), the U.S. Supreme Court analyzed the statutory text of the FLSA and noted that "Congress did not intend that the regulation of hours and wages should extend to the furthest reaches of federal authority." The Court cited an opinion from earlier that term, *Walling v. Jacksonville Paper Co.*, 317 U.S. 564 (1943), in which the Court held that an employee is "engaged in commerce", under §§ 6(a) and 7(a) of the FLSA, if that employee is in the "'channels of interstate commerce' . . . as distinguished from those who merely affected that commerce." *McLeod*, 319 U.S. at 493–

---

[5] The Supreme Court has held that an inference about the jurisdictional requirements of one statute drawn on the basis of the jurisdictional requirements of another must take into account the relative extent of the Congressional mandate employed in each context. *See Gulf Oil Corp. v. Copp Paving Co., Inc.*, 419 U.S. 186, 196-99 (1974). In *Gulf Oil Corp.*, the plaintiff-respondent operators of a concrete plant bringing suit for alleged antitrust violations relied on provisions of the FLSA to argue that their industry satisfied the "in commerce" element of the Clayton and Robinson-Patman Act *per se*, due to their manufacturing concrete for the construction of interstate highways. After considering "the statutory language, read light of its purposes and legislative history" of the laws at issue, *id.* at 197, the Court refused to apply FLSA caselaw to the antitrust context, holding that the "jurisdictional requirements of the provisions of the [Clayton and Robinson-Patman Act]" were more narrowly construed than those of the FLSA and "cannot be satisfied merely by showing that allegedly anticompetitive acquisitions and activities affect commerce." *Id.* at 195. In the present context, by contrast, case-by-case consideration of "how far Congress intended to extend its [statutory] mandate," *id.* at 197, cuts in the direction of permitting inference about the jurisdictional requirements of ERISA and the LMRA from those of the FLSA. As evidenced in part by nuanced variation in statutory language discussed below, the interstate jurisdictional mandate of the FLSA is more narrowly construed than that of ERISA and the LMRA, lending support to the proposition that relevant FLSA caselaw may be applied to the context of administration of employee benefit funds.

94 (citing *Walling*, 317 U.S. at 567); *accord Xelo v. Mavros*, No. 03 Civ. 3665 (NG) (MDG), 2005 U.S. Dist. LEXIS 21588, at *13 (E.D.N.Y. Sep. 28, 2005). In contrast, a plaintiff in an LMRA dispute need only show that the alleged "industry affect[s] commerce as defined under the LMRA" such that "in the event of a labor dispute between employers and unions within [the parties'] industry, commerce may be affected or impeded." *470 Stratford Holding Co. v. Local 32B-32J, Serv. Emps. Int'l Union*, 805 F. Supp. 118, 121 (E.D.N.Y. 1992) (internal citations and quotation marks omitted). Likewise, ERISA applies "to any employee benefit plan if it is established or maintained . . . by any employer engaged in commerce or in any industry or activity *affecting* commerce," including "any activity or industry *affecting* commerce within the meaning of the Labor Management Relations Act . . . ." 29 U.S.C. §§ 1002(12), 1003(a) (internal quotation marks omitted; emphasis added). Thus, because the LMRA and ERISA contain the lower "affecting" interstate commerce standard, rather than the heightened "channels" of interstate commerce standard, the Court can infer facts from the Plaintiff's complaint in order to satisfy the interstate commerce element.

It is clear from Plaintiffs' supporting documents in this case that the present action concerns parties to a labor-related dispute engaged in the construction industry. *See generally* CBA, Dkt. No. 9-2. Specifically, the nature of labor performed by the parties involves "heavy construction work," Christian Aff., Dkt. No. 10, at ¶ 3, including "building and foundation construction below street level, . . . deconstruction or demolition work, . . . installation, relocation or removal of utilities, . . . and [most] construction commonly associated with public works, infrastructure or heavy civil construction," CBA, art. VIII § 1. Although Plaintiffs have failed to allege it explicitly, the construction industry has been identified repeatedly by federal courts as an industry affecting interstate commerce for the purposes of ERISA and the LMRA. *See, e.g.*,

15

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 4–5 (1983) (holding that "a trust established by an agreement between four associations of employers active in the construction industry" was "unquestionably an 'employee welfare benefit plan' within the meaning of § 3 of ERISA"); *NLRB v. Plumbers Union of Nassau Cnty.*, 299 F.2d 497, 500 (2d Cir. 1962) (maintaining that "the nature of [a given] construction job" contributed toward a permissible inference "that a work stoppage by all the building crafts on [that] job would substantially affect the flow of materials into the state for incorporation into the building under construction . . ."). Thus, despite Plaintiffs' failure to explicitly allege the existence of an interstate jurisdictional nexus, this Court finds that the facts alleged by Plaintiffs are sufficient to support a permissible inference of the existence of such nexus in this action.

This Court next finds that the evidence in the record supports the conclusion that the ERISA Funds are in fact "multiemployer/employee benefit plans" pursuant to ERISA, 29 U.S.C. § 1001 *et seq.* An "employee benefit plan" is defined in subsection (3) of ERISA as "an employee welfare benefit plan or an employee pension benefit plan[,]" while a "multiemployer benefit plan" is defined in subsection (37)(A) of ERISA as "a plan to which more than one employer is required to contribute [and] which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer[.]" 29 U.S.C. §§ 1002(3), (37)(A)(i)–(iii). "Employee welfare benefit plan[s]" are in turn defined by subsection (1) of ERISA to include programs established by employers or employee organizations to provide "medical . . . care or benefits, . . . benefits in the event of sickness, accident, disability, death or unemployment, [or] apprenticeship or other training programs," while "employee pension benefit plan[s]" are defined in subsection (2) of ERISA to include any program "established or maintained by an employer or by an employee organization" that "provide[s] retirement income to

16

employees." 29 U.S.C. §§ 1002(1)–(2)(A)(i). Plaintiffs Local 14 Welfare and Training Funds constitute "employee welfare benefit plan[s]" pursuant to subsection (1) of ERISA given that they are programs "established for the purpose of providing medical and skill improvement benefits to eligible participants," and therefore also qualify as "employee benefit plans." Compl. ¶ 8. Plaintiffs Local 14 Annuity and Pension Funds constitute "employee pension benefit plans" pursuant to subsection (2) of ERISA given that they are programs "established for the purpose of providing retirement income to eligible participants," and thus they too qualify as "employee benefit plans." *Id.* ¶ 7. Additionally, as each of the ERISA Funds receives regular contributions from Defendant and is maintained pursuant to the CBA between Local 14 and the GCA, the ERISA Funds also qualify as "multiemployer benefit plans" pursuant to subsection (37) of ERISA. *See generally* CBA art. XI-A §§ 1–6, Dkt. No. 9-2.

This Court also finds that Defendant qualifies as an employer under both ERISA and the LMRA. ERISA defines an "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5). The LMRA similarly provides that an "employer" includes "any person acting as an agent of an employer, directly or indirectly . . . ." 29 U.S.C. § 152(2). As one of the companies making up the GCA and party to the CBA and Trust Agreements with Local 14, Defendant is certainly an employer for the purposes of both ERISA and the LMRA. *See generally* CBA; Trust Agreements, Dkt. Nos. 9-3, 9-4, 9-5, 9-6, 9-7.

This Court additionally finds that the evidence in the record supports the conclusions that Local 14 is a "labor organization;" the LMCT Fund is a "labor management cooperation trust fund;" and the Local 14 Trust Funds are joint trustee funds.. Section 2 of the LMRA provides that a "labor organization" includes "any organization of any kind . . . in which employees participate

and which exists for the purpose . . . of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 152(5). As a local division of a national labor union representing construction engineers, Local 14 qualifies as such an organization. *See* Memo. Supp. Mot. Def. J., Dkt. No. 13, at 2; Affidavit of Edwin L. Christian ("Christian Aff."), Dkt. No. 10, at ¶¶ 2–3; *see generally* CBA. Section 302 of the LMRA provides that a "labor management cooperation trust fund" is a program to fund the distribution of employee benefits, concerning which "the detailed basis on which such payments are to be made is specified in a written agreement with the employer" such that "employees and employers are equally represented in the administration of such fund" and whose written agreement provides for the appointment of "an impartial umpire" to settle deadlocked disputes between employers and employees regarding the administration of said fund. 29 U.S.C. § 186(c)(5)(B). As a trust fund established by a written contract between Local 14 and the GCA to collect and disburse funds for employee benefits which provides for both equal representation and impartial dispute resolution, the LMCT Fund qualifies as a "labor management cooperation trust fund." *See generally* Steinberg Aff., Exh. H ("LMCT Fund Trust Agreement"), Dkt. No. 9-7. Moreover, Section 302 of the LMRA also prescribes that any joint employee trust fund exempt from the LMRA's general restrictions on financial transactions between employers and employees must be one in which "payments are held in trust for the purpose of paying . . . for the benefit of employees . . . for medical or hospital care, pensions on retirement or death of employees" and whose payments "are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities." 29 U.S.C. §§ 185(c)(5)(A), (c)(5)(C). This Court finds that each of the Local 14 Trust Funds comports with these requirements and meets the standard for joint employee trust funds set under this section of the LMRA. *See generally* Trust Agreements.

Finally, this Court finds that evidence in the record supports the determination that the Trustees are "fiduciaries" of both the ERISA Funds and the LMCT Fund, and thus that the Trustees have standing to bring this action on behalf of Plaintiffs Local 14 Funds. *See* 29 U.S.C. §§ 1002(21)(A), 1132(a)(3). In relevant part, Section 3 of ERISA provides that "fiduciaries" with respect to ERISA Funds include anyone who "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). The Trust Agreements make clear that the Trustees retain this power with respect to the ERISA Funds and thus qualify as "fiduciaries" with respect to these funds. *See* Annuity Fund Trust Agreement art. 4 § 8; Pension Fund Trust Agreement art. IV; Welfare Fund Trust Agreement art. IV; Training Fund Trust Agreement art. 4 § 8. Concerning non-ERISA funds like the LMCT Fund, Section 501 of the LMRDA provides that "officers . . . and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group" amounting to fiduciary responsibility. 29 U.S.C. § 501(a). As made clear by the LMCT Fund Trust Agreement, the Trustees serve at least one if not several of these functions regarding the LMCT Fund, and thus qualify as "fiduciaries" on its behalf as well. *See generally* LMCT Fund Trust Agreement art. 6.

### E.  Defendant's Liability under ERISA

The Court recommends finding Defendant liable for unpaid contributions to all of the ERISA Funds except the Annuity Voluntary Fund, as Plaintiffs have failed to allege that any named Plaintiff is authorized to collect delinquent contributions on this fund's behalf.

Despite Defendant's default, the applicability of ERISA to the ERISA Funds, and the Trustees' status as fiduciaries on behalf of the ERISA Funds, Plaintiffs' unopposed factual allegations are sufficient only to establish Defendant's liability for most but not all of Plaintiff's ERISA claims. This is because "[e]ven after a defendant has defaulted, a plaintiff must . . . establish

that on the law it is entitled to the relief it seeks, given the facts as established by the default."

*Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs Local 14-14b v. Integrated Structures Corp.*, 12 Civ. 6354 (FB) (CLP), 2013 U.S. Dist. LEXIS 103714, at *2 (E.D.N.Y. June 27, 2013) (internal quotation marks and citations omitted). In other words, although "allegations that [a] defendant has failed to comply with its contractual obligations and with the statutory requirements of ERISA are sufficient to state claims on which relief is warranted[,]" Plaintiffs must still have alleged or otherwise demonstrated the factual basis necessary to sustain the conclusion of Defendant's liability in order to prevail on each of their respective claims against Defendant. *La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 348 (E.D.N.Y. 2009).

As established in light of Plaintiffs' unopposed factual allegations, at all times relevant to this action, Defendant was an "employer" and the ERISA Funds were "multiemployer/employee benefit plans" of which the Trustees are "fiduciaries" within the meaning of ERISA. Compl. ¶¶ 5, 9, 16. Defendant was required under the terms of the CBA to make specified contributions to the ERISA Funds over the entirety of the relevant timeframe, but it failed to make a number of these mandatory contributions over the course of the delinquency period identified in the Audit Report. *Id.* ¶¶ 17–19, 21–23, 27–28. Defendant's failure in this regard constitutes a violation of Section 515 of ERISA, 29 U.S.C. § 1145. *Id.* ¶ 27. This Court therefore respectfully recommends that the District Court grant Plaintiffs' motion for default judgment against Defendant with respect to Plaintiffs' Local 14 Trust Funds' ERISA claims concerning the ERISA Funds.

The one exception, as mentioned, is the Annuity Voluntary Fund. The CBA mandates that contributions to this fund "shall be cashed by Locals No. 14 and 14B Annuity Voluntary Fund." CBA art. XI-A § 4, Dkt. No. 9-2. As such, only the Annuity Voluntary Fund itself or an assignee

of the fund's claims for delinquent contributions would possess standing to collect delinquent contributions on behalf of the fund. *See Trs. of the Local 7 Tile Indus. Welfare Fund v. EAQ Constr. Corp.*, No. 14 Civ. 4097 (SJ), 2015 U.S. Dist. LEXIS 135002, at *27–29 (E.D.N.Y. Aug. 24, 2015) ("there must be an assignment of ownership of a claim for a party to bring suit in his own name rather than the grant of the 'right or ability to bring suit'" (internal citations omitted)); *see also Trs. of the Local 7 Tile Indus. Welfare Fund v. EAQ Const. Corp.*, No. 14 Civ. 5097 (SJ) (CLP), 2015 U.S. Dist. LEXIS 135002, at *11 (Aug. 24, 2015) ("[E]ven if plaintiffs had established that they were authorized to act as collection agents on behalf of the other funds, they would still lack standing to bring suit on behalf of these other funds because they have not named the other funds as plaintiffs.").

The Annuity Voluntary Fund is not a party to this case. *See* Compl. Nor have Plaintiffs demonstrated that any named Plaintiff is the assignee of the right to collect contributions to the fund. Plaintiffs do seem to imply, both in their Complaint and the supporting documents, that the *Annuity Fund* is entitled to collect on behalf of the Annuity Voluntary Fund. *See* Compl. ¶ 27; Steinberg Aff. ¶ 7, Dkt. No. 7; Monterroso Aff. ¶ 7, Dkt. No. 11. However, the CBA makes clear that the Annuity Voluntary Fund and the Annuity Fund are two separate entities, each of which receives a separate schedule of contributions. *Compare* CBA art. XI-A § 4 (Annuity Voluntary Fund) *with* CBA art. XI-A § 5 (Annuity Fund), Dkt. No. 9-2. To the extent that Plaintiffs suggest that the Annuity Fund is an assignee of the Annuity Voluntary Fund's collection claims, this suggestion is belied by the CBA. *See Chen v. JP Std. Constr. Corp.*, No. 14 Civ. 1086 (MKB) (RLM), 2016 U.S. Dist. LEXIS 36464, at *28–29 (Mar. 18, 2016) (declining to rely on plaintiff's factual allegation on a motion for default judgment where the allegation contradicted evidence on the record), *R & R adopted*, 2016 U.S. Dist. LEXIS 63007 (E.D.N.Y. May 12, 2016).

The Court finds that Plaintiffs have failed to demonstrate that any named Plaintiff in this action has standing to collect on behalf of this fund pursuant to this provision in the CBA. Therefore, the Court respectfully recommends that Plaintiffs' request for default judgment with respect to Defendant's failure to remit contributions to the Annuity Voluntary Fund be denied without prejudice.[6]

## F. Defendant's Liability under the LMRA

Plaintiffs' unopposed factual allegations are sufficient to establish Defendant's liability for Plaintiff's non-ERISA claims. Although the plaintiff bears the burden to "establish that on the law it is entitled to the relief it seeks, given the facts as established by the default," *Trs. of the Mosaic & Terrazzo Welfare, Pension, Annuity & Vacation Funds v. Suffolk Tile & Terrazzo, Inc.*, No. 10 Civ. 5804 (CBA), 2011 U.S. Dist. LEXIS 122435, at *2 (E.D.N.Y. Sep. 9, 2011) (internal quotation marks and citations omitted), this Court finds that Plaintiffs succeed in meeting this bar for the claims of the non-ERISA funds.[7] As demonstrated in light of Plaintiffs' unopposed factual

---

[6] In a recent case in this District concerning the same plaintiffs and the same collective bargaining agreement, the Court likewise determined that Plaintiffs had not established standing to collect delinquent contributions owed to the Annuity Voluntary Fund and denied Plaintiffs request for contributions to the fund without prejudice. *See BKS-NY*, No. 18 Civ. 0256 (LDH) (VMS), 2018 U.S. Dist. LEXIS 132994, at *11–12.

[7] While the Audit Report indicates that Defendants did not fail to remit any LMCT Fund contributions over the relevant time period, *see generally* Audit Report, it ought to be noted that Plaintiffs' LMRA claim against Defendant for non-ERISA dues is technically flawed insofar as Plaintiffs include LMCT Fund payments among this category of alleged dues owing. *See* Compl. ¶¶ 18, 22, 24. Contrary to Plaintiffs' allegation that "[p]ursuant to the terms of the Collective Bargaining Agreement, Defendant Coastal Environmental is obligated to remit, at specified rates . . . labor management trust fund contributions . . . based upon each regular or straight and double time hour of work performed by those employees covered by the Collective Bargaining agreement," *id.* ¶ 18, the CBA never mentions the LMCT Fund at all. *See generally* CBA art. XI (providing for all fringe benefit funds to which GCA members are obligated to contribute under the CBA); *see also BKS-NY, LLC*, No. 18 Civ. 0256 (LDH) (VMS), 2018 U.S. Dist. LEXIS 132994, at *14–18 (addressing precisely this issue with respect to the same plaintiffs and the same collective bargaining agreement, and finding that "[t]he Court cannot credit Plaintiffs' allegation that Defendant had an obligation under the CBA to make LMCT Fund contributions when the allegation is inconsistent with the CBA itself . . ."). Moreover, although the LMCT Fund Trust Agreement establishes Defendant's

22

allegations, at all times relevant to this action, Defendant was an "employer" pursuant to the LMRA. Compl. ¶ 16. During this timeframe, Defendant was under contractual obligation to pay non-ERISA dues in the form of Union Dues and Union Defense Fund contributions to Plaintiff Local 14 pursuant to the CBA. *Id.* ¶¶ 17–19. Defendant failed to make a number of these mandatory contributions over the course of the delinquency period identified in the Audit Report. *Id.* ¶¶ 21–22. Defendant's failure in this regard constitutes a violation of Section 301 of the LMRA. 29 U.S.C. § 185. Given Defendant's default and Plaintiffs' well-pleaded complaint as to this matter, this Court respectfully recommends that the District Judge grant Plaintiffs' motion for default judgment with respect to Plaintiff Local 14's LMRA claims concerning Defendant's outstanding Union Dues and Union Defense Fund contributions.

## G. Damages

As noted above, "a party's default is deemed to constitute a concession of all well pleaded allegations of liability" but "is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Thus, even after determining the liability of a defaulting party, a Court considering a motion for default judgment is required to "ascertain the amount of damages with reasonable certainty" through its own analysis rather than merely relying upon the movant's unopposed stipulation as to what these damages ought to be. *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

---

obligation to pay LMCT Fund contributions "in accordance with the 'Agreements' negotiated between the Union and the Employers" and defines 'Agreement' as "a collective bargaining agreement between the Union and/or an Employer or Association," LMCT Fund Trust Agreement §§ 1 ¶ 1, 4 ¶ 1, Plaintiffs have neither alleged an LMRA claim based on the breach of the LMCT Fund Trust Agreement nor entered into evidence any updated version of the CBA providing for such mandatory contributions. While this failure makes no practical difference to the merits of this particular action, if part of the sum allegedly owed by Defendant to Plaintiffs in non-ERISA dues were made up of unpaid LMCT Fund contributions, this Court would have recommended that Plaintiffs' non-ERISA claims be denied in part to the extent that they allege Defendant's liability for unpaid LMCT Fund dues.

Although a Court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence," Fed. R. Civ. P. 55(b)(2), this rule "allows but does not require the district judge to conduct a hearing" in the event that she finds one unnecessary, as when "detailed affidavits and documentary evidence" are available to support the Court's determination. *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53–54 (2d Cir. 1993) (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok v. Conti-Commodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

Plaintiffs support their application for damages with several documents and exhibits, including: the Steinberg Aff., Dkt. No. 9; the CBA, Dkt. No. 9-2; the Trust Agreements, Dkt. Nos. 9-3, 9-4, 9-5, 9-6, 9-7; the LMCTF Allocation Notice, Dkt. No. 9-8; the Audit Report, Dkt. No. 9-9; record of Plaintiff Local 14's wage scales and contribution rates effective over the period of Plaintiffs' audit, Steinberg Aff., Exh. J (the "Local 14 Wage Scale"), Dkt. No. 9-10; an invoice for Plaintiffs' process server, Steinberg Aff., Exh. K ("Invoice for Service of Process"), Dkt. No. 9-11; Plaintiffs' counsel's time records, Steinberg Aff., Exh. L ("Attorney Time Records"), Dkt. No. 9-12; the Christian Aff., Dkt. No. 10; the Monterroso Aff., Dkt. No. 11; and the Affidavit of payroll audit manager Lisa Madeiras, whose accounting firm Schultheis & Panettieri, LLP was retained by Plaintiffs Local 14 Trust Funds to conduct audits of contributing employers' payroll records ("Madeiras Aff."), Dkt. No. 12. The Court finds that these affidavits and supporting documentation provide sufficiently detailed information upon which to establish an appropriate calculation of damages without convening a hearing.

Pursuant to Section 502 of ERISA, when judgment is entered in favor of an ERISA plan to recover unpaid contributions owed to it under the terms of a collective bargaining agreement, that plan is entitled to an award consisting of:

(A)  the unpaid contributions,

(B)  interest on the unpaid contributions,

(C)  an amount equal to the greater of—

    (i)  interest on the unpaid contributions, or

    (ii)  liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D)  reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E)  such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). In contrast, although a successful plaintiff suing on behalf of a labor organization for violation of labor contracts pursuant to Section 301 of the LMRA is also entitled to an award of compensatory money damages, "a plaintiff bringing a claim under Section 301 of the LMRA may recover only those damages provided for in the collective bargaining agreement and trust agreements." *Finkel v. Colony Elec. Co.*, No. 10 Civ. 2240 (FB) (LB), 2010 U.S. Dist. LEXIS 144801, at *13 (Nov. 8, 2010), *R & R adopted*, 2011 U.S. Dist. LEXIS 9530 (E.D.N.Y. Jan. 31, 2011).

Plaintiffs contend that their claims entitle them to an award of cumulative damages accounting for: (1) $10,900.70 in unpaid ERISA contributions owed to Plaintiffs Local 14 Trust Funds; (2) $1,749.57 in prejudgment interest assessed on unpaid ERISA contributions owed to Plaintiffs Local 14 Trust Funds accruing at 6.0% annually from November 1, 2014, through August 28, 2018, plus additional prejudgment interest accruing at the same rate from August 29, 2018 through the date of judgment; (3) statutory damages in an amount equivalent to total prejudgment interest on unpaid ERISA contributions owed to Plaintiffs Local 14 Trust Funds; (4) $708.80 in unpaid non-ERISA contributions owed to Plaintiff Local 14; (5) prejudgment interest assessed on unpaid non-ERISA dues owed to Plaintiff Local 14 accruing at 9.0% annually from an "intermediate date" of September 1, 2015 until the date of judgment; (6) $2,850.00 in attorney's

fees compensating for the work done to bring Plaintiffs Local 14 Trust Funds' ERISA claims; and (7) $455.00 for reimbursement of costs of filing and service of process expended by Plaintiffs Local 14 Trust Funds in bringing their ERISA claims. *See* Memo. Supp. Mot. Def. J., Dkt. No. 13., at 9–17; Statement of Damages, Dkt. No. 8-1.

The Court will discuss each component of Plaintiffs' requested damages award in turn below.

### i.    Unpaid ERISA Dues

As noted, where judgment is rendered in favor of an ERISA plan suing under Section 515 of ERISA, 29 U.S.C. § 1145, that plan is entitled to recover the full amount of unpaid contributions owed to it by the defendant. 29 U.S.C. § 1132(g)(2)(A); *see also Gesualdi v. Magnolia Pro Trucking, Inc*., No. 11 Civ. 4082 (ADS) (AKT), 2012 U.S. Dist. LEXIS 130203, at *5 (E.D.N.Y. Aug. 20, 2012). This means that in such cases, plaintiffs will be allowed to recover damages for all and only those claims upon which they have successfully established the defendants' liability to them. In the present case, Plaintiffs' audit of Defendant's records establishes that Defendant failed to pay a cumulative sum of $10,900.70 in ERISA dues owed to the ERISA Funds under the CBA. *See* Audit Report; Monterroso Aff. ¶ 5. As discussed above, although this Court has determined that Defendant is liable to Plaintiffs Local 14 Trust Funds for unpaid contributions to most of the ERISA Funds, Plaintiffs lack standing to sue on behalf of the Annuity Voluntary Fund, and hence cannot recover unpaid contributions owed to this fund.

Of Plaintiffs' requested principal award to the ERISA Funds of $10,900.70, $1,642.50 is owed to the Annuity Voluntary Fund. *See* Statement of Damages, Dkt. No. 8-1; Audit Report; Memo. Supp. Mot. Def. J. at 9. The difference between these two amounts, $9,258.20, is owed to Plaintiffs Local 14 Trust Funds.

The Court therefore respectfully recommends that the District Court grant damages reimbursing Plaintiffs Local 14 Trust Funds for Defendant's unpaid ERISA contributions in the amount of $9,258.20.

### ii.    Prejudgment Interest on Unpaid ERISA Dues Through Date of Judgment

Plaintiffs Local 14 Trust Funds are additionally entitled to prejudgment interest on unpaid ERISA dues pursuant to Section 502 of ERISA. 29 U.S.C. § 1132(g)(2)(B). ERISA provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986." 29 U.S.C. § 1132(g)(2). As Plaintiffs correctly note, *see* Memo. Supp. Mot. Def. J. at 10, each of the ERISA Funds Trust Agreements independently provides that interest on unpaid ERISA dues is to accrue at a rate of 6.0%. *See* Annuity Fund Trust Agreement art. 4 § 7 ¶ 2, Dkt. No. 9-3; Pension Fund Trust Agreement art. VII § 2, Dkt. No. 9-4; Welfare Fund Trust Agreement art. VII § 2, Dkt. No. 9-5; Training Fund Trust Agreement art. 4 § 7 ¶ 2, Dkt. No. 9-6. Moreover, given that the Pension Fund Trust Agreement and Welfare Fund Trust Agreement both provide that interest is to accrue in such cases on an annual basis, this Court accepts Plaintiffs' submission that 6.0% interest ought to be calculated on an annual basis upon unpaid contributions due to any of the four ERISA Funds. *See* Memo. Supp. Mot. Def. J. at 10; Madeiras Aff. ¶ 6, Dkt. No. 12.

This Court has reviewed and accepts the methodology for calculation of interest used by Plaintiffs' auditor described in the Madeiras Aff. ¶¶ 6–7. As explained there, interest is to be assessed separately at the end of each four-month audit period on each sum of unpaid dues accrued to each ERISA Fund over the course of that audit period using the following formula: [Number of days from the end of the given audit period until the date of total interest accrual] x [interest rate (6.0%)] / [365 days] x [principal amount owed in unpaid contributions to the given ERISA Fund

27

accumulated over the given audit period]. *Id.* Using this formula and setting the date of total interest accrual as of today, September 5, 2019, this Court finds that Defendant owes Plaintiffs a total of $2052.23 in prejudgment interest on unpaid ERISA contributions to date.[8] This Court further finds that the aforementioned total ought to increase at a rate of approximately $1.52 per day (equivalent to: [1 day] x [interest rate (6.0%)] / [365 days] x [principal amount owed in total unpaid ERISA contributions]) for each additional day between today and the date at which final judgment is rendered on this action. *See Bedasie v. Mr. Z Towing, Inc*., No. 13 Civ. 5453 (CLP), 2017 U.S. Dist. LEXIS 43973, at *150 n.71 (E.D.N.Y. Mar. 24, 2017) (noting that while "[f]or purposes of clarity, the Court has represented the per diem interest amount as rounded to the nearest hundredth," the Court would use "un-rounded values in its calculations" so as to "calculate a more accurate amount for total interest").

In light of these calculations, this Court respectfully recommends that the District Court grant Plaintiffs Local 14 Trust Funds a total prejudgment interest award on ERISA dues of $2052.23 as of today, September 5, 2019, plus an additional sum of approximately $1.52 per day for each additional day until judgment is rendered.

---

[8] For Audit Period 16(11/01/2014 – 02/28/2015), the principal owed in unpaid contributions to the ERISA Funds (*i.e.*, aggregate of welfare, pension, annuity and training fund categories) amounts to $2,234.00, for which the pre-judgment interest accrued as of September 5, 2019 is calculated to be $605.93. *See* Audit Report at 3. For Audit Period 17(03/01/2015 – 06/30/2015), the principal owed in unpaid contributions to the ERISA Funds amounts to $1,006.00, for which the pre-judgment interest accrued as of September 5, 2019 is calculated to be $252.69. *See id.* at 4. For Audit Period 19(11/01/2015 – 02/28/2016), the principal owed in unpaid contributions to the ERISA Funds amounts to $4,098.40, for which the pre-judgment interest accrued as of September 5, 2019 is calculated to be $865.72. *See id.* at 5. For Audit Period 21(07/01/2016 – 10/31/2016), the principal owed in unpaid contributions to the ERISA Funds amounts to $1,919.80, for which the pre-judgment interest accrued as of September 5, 2019 is calculated to be $327.89. *See id.* at 6. The total sum of the pre-judgment interest amount equals $2,052.23.

### iii.     Statutory Damages on Unpaid ERISA Dues

Plaintiffs Local 14 Trust Funds are additionally entitled to statutory damages on unpaid ERISA dues pursuant to Section 502 of ERISA. 29 U.S.C. § 1132(g)(2)(C). The amount to which the Local 14 Trust Funds are entitled will deviate from Plaintiffs' estimate to an extent corresponding to which the principal sum giving rise to this estimate differs from Defendant's liability.

Pursuant to Section 502, a plaintiff to whom a defendant is liable for unpaid ERISA dues is entitled to statutory damages amounting to "an amount equal to the greater of interest on the unpaid contributions, or liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount [of unpaid dues] determined by the court." *Id*. As explained above, this Court has found that Defendant is liable to Plaintiffs Local 14 Trust Funds for an amount of $9,258.20 in unpaid ERISA dues, as well as cumulative prejudgment interest on Plaintiffs' ERISA claims amounting to at least $2052.23 as of today, September 5, 2019. Although neither the CBA nor the Trust Agreements provide any formula for calculating liquidated damages in an action for unpaid ERISA dues, such damages would at most be equivalent to 20.0% of the principal sum of dues owed, which in this case comes out to $1,851.64. Given that the amount of prejudgment interest accrued on Plaintiffs' ERISA claims already exceeds the maximum amount that liquidated damages could reach on this claim, statutory damages in this case must be awarded at an amount equal to prejudgment interest. This Court thus finds it appropriate to follow Plaintiffs' suggestion of awarding statutory damages of an amount equivalent to the total prejudgment interest awarded to Plaintiffs on this claim. *See* Memo. Supp. Mot. Def. J. at 11.

It is therefore respectfully recommended that the District Court grant Plaintiffs Local 14 Trust Funds an award of statutory damages equivalent to the sum of prejudgment interest on

Defendant's unpaid ERISA contributions in the amount of $2052.23, to increase incrementally by approximately $1.52 per day between today and the date at which final judgment is rendered.

### iv.     Non-ERISA Dues

As noted above, a plaintiff suing pursuant to Section 301 of the LMRA, 29 U.S.C. § 185, in whose favor judgment is rendered is entitled to an award of compensatory damages equivalent to the amount of unpaid dues owed pursuant to the relevant collective bargaining agreement. *Finkel*, No. 10 Civ. 2240 (FB) (LB), 2010 U.S. Dist. LEXIS 144801, at \*13. In this case, Plaintiffs have identified this amount at a sum of $708.80 in non-ERISA contributions owed. *See* Audit Report; Monterroso Aff. ¶ 5. Having found Defendant liable to Plaintiff Local 14 for unpaid non-ERISA dues, this Court finds no reason to disagree with Plaintiffs' assessment as to the amount of contributions still in owing. It is therefore respectfully recommended that, pursuant to Section 301 of the LMRA, Plaintiff Local 14 be awarded a sum of $708.80 in reimbursement for the non-ERISA dues owed to it by Defendant.

### v.     Prejudgment Interest on Unpaid Non-ERISA Dues

As noted by Plaintiffs, precedent in the Second Circuit allows for discretionary awards of prejudgment interest with respect to claims under the LMRA. *See, e.g.*, *Lodges 743 & 1746, Int'l Ass'n of Machinists & Aerospace Workers v. United Aircraft Corp.*, 534 F.2d 422, 446–47 (2d Cir. 1975) (holding that "[w]hether to award prejudgment interest in cases arising under federal law has in the absence of a statutory directive been placed in the sound discretion of the district courts"). Given that the CBA does not prescribe a rate at which interest ought to accrue on unpaid non-ERISA contributions, Plaintiffs request that prejudgment interest on non-ERISA contributions be calculated using the 9.0% simple annual rate prescribed under New York law. *See* Memo. Supp. Mot. Def. J. at 15–16; N.Y. C.P.L.R. § 5004; *see also Lanzafame v. Dana Restoration, Inc*., No.

09 Civ. 873 (ENV) (JO), 2011 U.S. Dist. LEXIS 29341, at *4 (E.D.N.Y. Mar. 22, 2011) (holding that "[i]n awarding interest, a court may look to state law to determine an appropriate rate"). Plaintiffs further request that this calculation be made in accordance with the requirement under New York law that "where . . . damages were incurred at various times" after "the earliest ascertainable date the cause of action existed," then "interest shall be computed . . . upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b); *see* Memo. Supp. Mot. Def. J. at 16. In light of the fact that Plaintiffs' request is unopposed and in keeping with the approach adopted in similar cases in this District, see, e.g., *Finkel v. Triple A Group, Inc*., 708 F. Supp. 2d 277, 287 (E.D.N.Y. 2010); *Bricklayers Ins. and Welfare Fund v. Verse, Inc*., No. 12 Civ. 4271 (FB) (JMA), 2013 U.S. Dist. LEXIS 130102, at *11 (Aug. 20, 2013), *R & R adopted*, 2013 U.S. Dist. LEXIS 129732 (E.D.N.Y. Sept. 11, 2013); *Bricklayers Ins. and Welfare Fund v. Primo Brick, Inc*., No. 11 Civ. 5742 (FB) (LB), 2013 U.S. Dist. LEXIS 69417, at *5 (Apr. 3, 2013), *R & R adopted*, 2013 U.S. Dist. LEXIS 69184 (E.D.N.Y. May 15, 2013), this Court accepts Plaintiffs' submission and recommends that prejudgment interest be assessed on the principal sum of Defendant's unpaid non-ERISA dues at a 9.0% simple annual rate accruing from a reasonable intermediate date.

Notwithstanding the appropriateness of Plaintiffs' request and suggested methodology for calculation of prejudgment interest on their non-ERISA claims, this Court declines to accept Plaintiffs' suggested date of September 1, 2015 as the "single reasonable intermediate date" from which this interest ought to accrue. *See* Memo. Supp. Mot. Def. J. at 16. Courts in previous ERISA cases applying N.Y. C.P.L.R. § 5001(b) have consistently set such dates at the chronological midpoint of the relevant period over which the principal sum of debt accumulated. *See, e.g., Verse, Inc*., No. 12 Civ. 4271 (FB) (JMA), 2013 U.S. Dist. LEXIS 130102, at *11; *Primo Brick, Inc*., No.

11 Civ. 5742 (FB) (LB), 2013 U.S. Dist. LEXIS 69417, at *5. Applying this methodology to the present case, the "reasonable intermediate date" in this case ought to be the chronological midpoint of the time period over which the principal sum of Defendant's unpaid non-ERISA dues accrued, viz. November 1, 2014 to October 31, 2016. *See* Audit Report. As this period is exactly 730 days, the chronological midpoint date comes out to November 1, 2015, rather than September 1, 2015.

In light of these considerations and in accordance with New York law, this Court recommends awarding Plaintiff Local 14 prejudgment interest on Defendant's unpaid non-ERISA dues assessed at a 9.0% simple annual rate on the total $708.80 principal sum from the midpoint date of November 1, 2015 until the date of rendering judgment. It is respectfully recommended that this award amount to $247.12 accrued as of today, September 5, 2019, plus an additional amount of approximately $0.18 per day for each day until the District Court's entry of final judgment on this action. *See Bedasie*, No. 13 Civ. 5453 (CLP), 2017 U.S. Dist. LEXIS 43973, at *150 n.71.

vi.    **Attorney's Fees**

Plaintiffs Local 14 Trust Funds correctly claim that Section 502 of ERISA entitles them to an additional award of "reasonable attorney's fees" reimbursing them for the work billed by counsel in this action to recover Defendant's unpaid ERISA contributions. 29 U.S.C. § 1132(g)(2)(D). In Plaintiffs' Memorandum in Support of Default Judgment, Plaintiffs' counsel brings ample support for the contention that Courts in this District have recently awarded attorney's fees billed at a rate and for quantities of hours similar to those at which counsel has billed in the present action. *See* Memo. Supp. Mot. Def. J. at 11-14, Dkt. No. 13 (citing *Cruz v. Local Union No. 3 of IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994) (noting that a determination of reasonable attorney's fees requires consideration of rates "prevailing in the community for similar

service of lawyers of reasonably comparable skill, experience and reputation") (quoting *Blum v. Stenson*, 465 U.S. 886, 894 n.11 (1984)); *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174–77 (2d Cir. 2009) (noting that a court making a determination as to the reasonableness of attorney's fees ought to consider the going hourly rates charged by attorneys in the district in which that court is located); *BKS-NY*, No. 18 Civ. 0256 (LDH) (VMS), 2018 U.S. Dist. LEXIS 132994, at *31–33 (recommending an award of attorney's fees assessed at $380.00 per hour in a similar ERISA action); *The Annuity, Pension, Welfare and Training Funds of the Int'l Union of Operating Engineers Local 14-14B v. Namow*, No. 17 Civ. 1469 (ARR) (SJB), 2018 U.S. Dist. LEXIS 33825, at *17–20 (Feb. 28, 2018) (recommending an award of attorney's fees assessed at $370.00 per hour in a similar ERISA action), *R & R adopted*, 2018 U.S. Dist. LEXIS 47543 (E.D.N.Y. Mar. 22, 2018)). Plaintiffs also convincingly support their contention as to the appropriateness of an award of attorney's fees on the basis of reconstructed timesheets providing an explanatory account of the hours expended by counsel. *See* Memo. Supp. Mot. Def. J. at 11–12; *Ferrara v. Reliable Indus. II, Inc.*, No. 11 Civ. 1434 (ENV) (MDG), 2012 WL 6851088, at *4 (Sept. 27, 2012) (noting that "[a] party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records" (citation omitted)), *R & R adopted*, 2013 WL 146085 (E.D.N.Y. Jan. 14, 2013); *David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y. 1993) (noting the sufficiency of "reconstructions of . . . contemporaneous [time] records" which document charges with specificity to support an award of attorney's fees). In light of this evidence, this Court finds both that counsel's $380 per hour billing rate and alleged seven and-a-half hours of service expended conform to the standard for reasonable attorney's fees in this District for this type of action, and that counsel's reconstructed timesheets provide sufficient detail to support an

award of attorney's fees in Plaintiffs' favor at the requested sum of $2,850.00. *See generally* Attorney Time Records, Dkt. No. 9-12; Steinberg Aff. ¶¶ 14–16, Dkt. No. 9.

This Court takes notice that the amount of attorney's fees requested by Plaintiffs in this action exceeds the amount prescribed according to the ERISA Funds Trust Agreements, which explicitly provide for an award of attorney's fees at 20.0% of the principal sum collectively owed to the ERISA Funds. *See* Annuity Fund Trust Agreement art. 4 § 7 ¶ 2, Dkt. No. 9-3 (fixing attorney's fees in actions to recover unpaid Annuity Fund dues at 20.0% of "the obligation of the Employer who is in default"); Pension Fund Trust Agreement art. VII § 2, Dkt. No. 9-4 (fixing attorney's fees in actions to recover unpaid Pension Fund dues at "20% of the indebtedness"); Welfare Fund Trust Agreement art. VII § 2, Dkt. No. 9-5 (fixing attorney's fees in actions to recover unpaid Welfare Fund dues at "20% of the indebtedness"); Training Fund Trust Agreement art. 4 § 7 ¶ 2, Dkt. No. 9-6 (fixing attorney's fees in actions to recover unpaid Annuity Fund dues at 20.0% of "the obligation of the Employer who is in default"). Recognizing this conflict, Plaintiffs request in their Memorandum in Support of Default Judgment that these problematic clauses be ignored on the authority of cases establishing that "parties to a collective bargaining agreement may not designate reasonable attorney's fees as a set percentage of the outstanding contributions." Memo. Supp. Mot. Def. J. at 12 n.2 (citing *Bourgal v. Lakewood Haulage Inc.*, 827 F. Supp. 126, 129 (E.D.N.Y. 1993) and *Annuity, Pension, Welfare and Training Funds of the Int'l Union of Operating Engineers Local 14-14B, AFL-CIO v. Angel Constr. Group, LLC*, No. 08 Civ. 4760 (SJ) (JO), 2009 U.S. Dist. LEXIS 126620, at *32 n.4 (Sept. 8, 2009), *R & R adopted*, 2010 U.S. Dist. LEXIS 22646 (E.D.N.Y. Mar. 11, 2010)). Although both examples cited by Plaintiffs to this effect are cases holding only that attorney's fees cannot be *inflated* by virtue of these kinds of provisions, Plaintiffs are nonetheless correct that "the determination of a reasonable fee award

34

under Section 1132(g)(2)(D) of ERISA lies within the sound discretion of the district judge,"
*Bourgal*, 827 F. Supp. at 129; [9] *see also Annuity, Pension, Welfare and Training Funds of the Int'l Union of Operating Eng'rs Local 14-14B v. Tricon Enters*., No. 07 Civ. 3289 (SLT) (RER) 2008 U.S. Dist. LEXIS 104732, *9–10 (Nov. 20, 2008) (holding that attorney's fees ought to be calculated on a case-by-case basis and could not be capped ahead of time at a set percentage by a contractual provision in a trust agreement), *R & R adopted*, 2008 U.S. Dist. LEXIS 102501 (E.D.N.Y. Dec. 18, 2008). Moreover, this Court agrees with Plaintiffs' counsel that an award of attorney's fees in the amount requested by Plaintiffs is consistent with the "sound exercise of [the Court's] discretion" insofar as there is no doubt that Defendant is clearly liable in this action; that Section 502 of ERISA, 29 U.S.C. § 1132(g)(2), authorizes an award of attorney's fees in such a case; that the amount requested by Plaintiffs in attorney's fees is not objectively unreasonable; that it would be inequitable to mandate that Plaintiffs absorb the full cost of attorney's fees in this

---

[9] In *Bourgal*, this Court considered "whether parties to a freely-bargained collective bargaining agreement may designate reasonable attorneys' fees as a set percentage of the defendant's outstanding contributions and amounts owed" in the context of an ERISA case. *Bourgal*, 827 F. Supp. at 129. Citing "the requirement that a court exercise discretion in calculating a fee, [ERISA]'s express requirement that a court find such a fee reasonable, and the understanding that fee awards are not punitive," the Court decided not to "apply *automatically* the . . . fee award provision in the collective bargaining agreement" in that case. *Id.* (emphasis added). Although *Bourgal* has been cited in several subsequent decisions as authority that a court ought to "declin[e] to utilize a collective bargaining agreement's provision of awarding attorney's fees based on a set percentage of . . . delinquent contributions" to ERISA funds, *Annuity v. Marbro Realty Co.*, No. 11 Civ. 5722 (FB) (RER), 2012 U.S. Dist. LEXIS 114609, at *15 n.2 (E.D.N.Y. July 16, 2012), *R & R adopted*, LEXIS 114623, (E.D.N.Y., Aug. 14, 2012); *Angel Constr. Group, LLC*, No. 08 Civ. 4760 (SJ) (JO), 2009 U.S. Dist. LEXIS 126620, at *32 n.4, this Court is aware of no reason why its exercise of discretion, compliance with ERISA Section 502, and avoidance of punitive attorney's fee awards should compel it to disregard contractual fee award provisions entirely in cases where such provisions threaten to limit presumptively reasonable fee awards rather than inflate them. Indeed, insofar as such fee award caps exist as features of freely-bargained agreements, it is not hard to imagine that the Court's categorical disregard for these provisions could cheapen the value of the contractual instruments giving rise to plaintiffs' ERISA claims in the first place. Nonetheless, in the absence of prior authority to lean upon, this Court is unprepared to deviate from its own precedent in applying *Bourgal* by introducing a distinction as to the relevance of set fee award provisions in the court's discretionary calculation of attorney's fees.

action; and that an award of attorney's fees in this case will likely serve to "underline the seriousness of offenses against ERISA Funds and prove a deterrent to delinquencies on the part of this and other employers in the future." *See* Steinberg Aff. ¶ 17.

Pursuant to these considerations and Section 502 of ERISA, this Court finds that Plaintiffs Local 14 Trust Funds are entitled to an award of attorney's fees equivalent to Plaintiffs' counsel's hourly billing rate multiplied by the hours expended by counsel on this case. It is therefore respectfully recommended that the Local 14 Trust Funds be granted $2,850.00 in attorney's fees.

### vii.    Costs of Filing and Service of Process

Finally, Plaintiffs' request for an award of the costs of filing and service of process is supported by Section 502 of ERISA, which entitles fiduciaries who successfully sue on behalf of an ERISA plan to an award of reimbursement for associated "costs of the action." 29 U.S.C. § 1132(g)(2)(D). Precedent supports the inclusion of filing fees and the costs of process service as part of the damage award in an ERISA action. *See, e.g.*, *Morin v. Nu-Way Plastering Inc.*, No. 03 Civ. 0405 (LDW) (ARL), 2005 U.S. Dist. LEXIS 37867 , at *4 (E.D.N.Y. Dec 19, 2005) (holding that "costs [including filing fees and process service fees] are reimbursable as long as they were incidental and necessary to the representation of the client" (internal quotation marks and citation omitted)). In this case, Plaintiffs have adequately supported their representation as to the $55.00 cost of service of process upon Defendant by submitting the Invoice for Service of Process. *See* Dkt. No. 9-11. Although Plaintiffs have not filed any similar article of documentation attesting to the cost of the filing fee for this action, this Court nonetheless takes judicial notice of the required $400.00 filing fee. *See BKS-NY*, No. 18 Civ. 0256 (LDH) (VMS), 2018 U.S. Dist. LEXIS 132994, at *34. This Court therefore recommends that, pursuant to Section 502 of ERISA, Plaintiffs Local 14 Trust Funds be awarded the costs of filing and service of process amounting to $455.00.

**CONCLUSION**

For the reasons articulated above, this Court respectfully recommends that Plaintiffs' motion for default judgment be granted in part and denied in part. This Court recommends entering judgment against Defendant and entering an award to Plaintiffs comprised of (1) $9,258.20 in Defendant's unpaid ERISA contributions; (2) $2052.23 in prejudgment interest on Defendant's unpaid ERISA contributions accruing at 6.0% annually from the end date of the respective audit periods underlying the Plaintiffs' claims until today, September 5, 2019, plus an additional amount of approximately $1.52 per day for each day until the District Court's entry of final judgment; (3) $2052.23 in statutory damages on Defendant's unpaid ERISA contributions as of today, plus an additional amount of approximately $1.52 per day for each day until the District Court's entry of final judgment; (4) $708.80 in on Defendant's unpaid non-ERISA contributions; and (5) $247.12 in prejudgment interest on Defendant's unpaid non-ERISA contributions in the amount of 9.0% annually from November 1, 2015 until today, plus an additional amount of approximately $0.18 per day for each day until the District Court's entry of final judgment. This Court further recommends awarding Plaintiffs (6) $2,850.00 in attorney's fees, as well as (7) $455.00 for reimbursement of costs of filing and service of process. Plaintiffs' counsel is hereby directed to mail a copy of this report and recommendation to Defendant at its last known address and to file proof of delivery with the Court within five (5) business days.

**OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

This report and recommendation will be filed electronically, and copies will be sent out to both parties at their listed addresses. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file

timely objections shall constitute a waiver of both those objections and the right to appeal any order or judgment entered based on this report and recommendation. *See Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008); *Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985). Responses to any objections shall be due fourteen (14) days from service of the objection. *See* Fed. R. Civ. P. 72(b)(2).

**SO ORDERED.**

                                          /s/ Steven L. Tiscione
                                          Steven L. Tiscione
                                          United States Magistrate Judge
                                          Eastern District of New York

Dated: Brooklyn, New York
         September 5, 2019